**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ENRIQUE GARCIA MORALES, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

ESSENTIAL HOSPITALITY W 77 LLC
d/b/a ESSENTIAL BY CHRISTOPHE, and
CHRISTOPHE BELLANCA

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff, ENRIQUE GARCIA MORALES ("Plaintiff GARCIA MORALES"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, ESSENTIAL HOSPITALITY W 77 LLC (the "Corporate Defendant"), and CHRISTOPHE BELLANCA (the "Individual Defendant" and collectively with the Corporate Defendant, the "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages, including overtime, due to Defendants' invalid tip credit policy; (2) unpaid minimum wages, including overtime, due to Defendants' time shaving policy; (3) liquidated damages; and (4) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid minimum wages, including overtime, due to Defendants' invalid tip credit policy; (2) unpaid minimum wages, including overtime, due to Defendants' time shaving policy; (3) unlawful wage deductions and unreimbursed uniform expenses; (4) liquidated damages; (5) statutory penalties due to violations of the Wage Theft Prevention Act ("WTPA"); and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendants' restaurant, Essential by Christophe, is located at 103 West 77th Street, New York, NY 10024, and a substantial part of the events giving rise to the claims herein occurred within this District.

## PARTIES

5. Plaintiff GARCIA MORALES, for all relevant time periods, was a resident of Richmond County (Staten Island), New York.

6. Corporate Defendant ESSENTIAL HOSPITALITY W 77 LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business ("Essential by Christophe") located at 103 West 77th Street, New York, New York 10024.

7. Individual Defendant CHRISTOPHE BELLANCA is the chef and owner of Corporate Defendant ESSENTIAL HOSPITALITY W 77 LLC. Individual Defendant CHRISTOPHE BELLANCA exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, Individual Defendant, either personally or through management, exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all relevant times, employees of Defendants' business could complain to Individual Defendant through management regarding any of the terms of their employment, and Individual Defendant would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, or terminating or hiring such employees. At all relevant times, Individual Defendant CHRISTOPHE BELLANCA exercises functional control over Defendants' business and its financial operations.

8. At all relevant times, the Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL, with annual gross revenues exceeding $500,000.

9. At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

## **<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>**

10. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt front-of-house personnel (including servers, bussers, bartenders, food runners, among others) employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

11. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' invalid tip credit policy and time shaving policy.

12. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

13. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt front-of-house personnel (including servers, bussers, bartenders, and food runners, among others) employed by Defendants on or after the date

that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

14. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

15. The proposed Class is so numerous such that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of such persons is presently within the sole control of Defendants, Defendants employ approximately forty (40) individuals at their location, and there is no doubt that there are more than forty (40) members of the Class when considering the six-year statutory period.

16. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants': (1) failure to pay wages and overtime wages, due to an invalid tip credit policy; (2) failure to pay wages and overtime wages, due to a time shaving policy; (3) unlawful wage deductions and uniform-related violations; (4) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (5) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices

affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

17. Plaintiff and the Class suffered from Defendants' failure to pay wages due to Defendants' invalid tip credit policy because Defendants required Plaintiff and Class Members to engage in non-tip-producing work or side work for over 20% or 2 hours of the total work they performed for that day, and for continuous periods of time exceeding thirty (30) minutes, and additionally because Defendants failed to provide the written notice required as a precondition to taking any tip credit.

18. Plaintiff and the Class suffered from Defendants' failure to pay wages due to Defendants' time shaving policy because Defendants failed to properly compensate Plaintiff and Class Members for off-the-clock work performed during meal breaks and before scheduled shifts.

19. Plaintiff is both able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

20. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

21. Defendants and other employers throughout the State of New York violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

22. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a) Whether Defendants employed Plaintiff and the Class within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were deducting tip credits from their wages, as required by 12 N.Y.C.R.R. § 146-2.2;

f) Whether Defendants provided proper wage statements informing Plaintiff and Class Members of the amount of tip credits deducted from their wages for each pay period, their proper overtime rates of compensation, and other information Defendants were required to provide them on their wage statements, as provided under the New York Labor Law;

g) Whether Defendants deducted the proper amounts of tip credit allowance from Plaintiff's and Class Members' wages under the New York Labor Law;

h) Whether Defendants required Plaintiff and Class Members to perform non-tipped work for more than 20% of their workday or for more than two (2) hours per day;

i) Whether Defendants required Plaintiff and Class Members to perform non-tipped work for continuous periods of time exceeding thirty (30) minutes;

j) Whether Defendants' mandatory tip pool was operated in compliance with 12 N.Y.C.R.R. § 146-2.16;

k) Whether Defendants required Plaintiff and Class Members to purchase and maintain uniforms at their own expense, in violation of 12 N.Y.C.R.R. § 146-1.7;

l) Whether Defendants made unlawful wage deductions in violation of NYLL § 193;

m) Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law;

n) Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law;

o) Whether Defendants paid Plaintiff and Class Members for all hours worked; and

p) Whether Defendants properly compensated overtime premiums to Plaintiff and Class Members for their overtime hours worked under New York State law.

## STATEMENT OF FACTS

### i. Plaintiff GARCIA MORALES's Employment Background

23. In or around April 2023, Plaintiff GARCIA MORALES was hired by Defendants to work as a Runner at Defendants' Essential by Christophe, located at 103 West 77th Street, New York, NY 10024. Plaintiff was employed by Defendants until on or about January 2026, at which point Defendants terminated Plaintiff's employment without legitimate cause.

24. From the beginning of his employment until his termination, Plaintiff GARCIA MORALES was typically scheduled by Defendants to work five (5) closing shifts per week, from approximately 5:00 p.m. to 12:00 a.m. (midnight). On occasion, Plaintiff was required to remain on site until approximately 1:00 a.m. or 1:30 a.m. due to mandatory post-shift duties imposed by Defendants. Plaintiff was not paid for any work performed past midnight on those occasions.

25. At all relevant times, Defendants scheduled FLSA Collective Plaintiffs and Class Members to work similar amounts of hours per week.

26. From the start of his employment to December 2023, Plaintiff was paid by Defendants at a tipped credit hourly rate of $10.00, for all hours worked. From January 2024 to December 2024, Plaintiff was paid by Defendants at a tipped credit hourly rate of $10.65, for all hours worked. From January 2025 to December 2025, Plaintiff was paid by Defendants at a tipped credit hourly rate of $11.00, for all hours worked. From January 2026 through the conclusion of his employment, Plaintiff was paid by Defendants at a tipped credit hourly rate of $11.35, for all hours worked. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

**ii. Plaintiff's Invalid Tip Credit Policy Claim – Excessive Non-Tipped Side Work**

27. Throughout their employment, Plaintiff, FLSA Collective Plaintiffs, and Class Members were subjected to Defendants' invalid tip credit policy, in violation of the FLSA and the NYLL.

28. Throughout Plaintiff's employment, Defendants deducted a tip credit from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages.

29. However, Defendants were not actually entitled to deduct any tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages under the FLSA or the NYLL because Defendants deducted tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages for all hours worked despite having caused them to engage in non-tipped duties for: (a) continuous periods of time exceeding thirty (30) minutes; and (b) more than two (2) hours

per workday or twenty percent (20%) of the work they performed each workday, in direct violation of 12 N.Y.C.R.R. § 146-2.9 and 29 C.F.R. § 531.56(e).

30. Throughout Plaintiff's employment, Defendants required Plaintiff to engage in extensive non-tipped duties, including but not limited to: polishing silverware and glassware; sweeping and other miscellaneous cleaning of the dining room and kitchen; performing duties typically taken on by expeditors throughout the entire shift; garnishing plates with flowers; assisting dishwashers during busy periods; closing the kitchen at the end of shift; and maintaining a written log/list of all complimentary dishes and drinks given to customers "on the house." Plaintiff would spend approximately three (3) hours per single shift performing this non-tipped side work, including continuous periods of at least thirty (30) minutes. Because Plaintiff's single shifts were typically around eight and a half (8.5) hours long, Plaintiff's three (3) hours of non-tipped side work routinely consumed approximately thirty-five percent (35%) of his hours worked. Defendants also required FLSA Collective Plaintiffs and Class Members to engage in similar non-tipped side work for similar amounts of time.

31. As a direct result of Defendants' invalid tip credit policy, Plaintiff and Class Members were paid below the New York State minimum wage in violation of the NYLL. *See* 12 N.Y.C.R.R. § 146-1.2, *et seq.*

32. Throughout Plaintiff's employment, Plaintiff was subject to a mandatory tip pool, which was calculated without regard to how much tipped work was actually done by each type of employee. For instance, runners (such as Plaintiff) were allocated 6.5 "points" in the tip pool while bussers were allocated 6 "points," resulting in only a $15.00 difference per shift on average—despite the fact that runners were tasked with completing substantially more side work than

bussers. The mandatory tip pool failed to fairly reflect the actual proportion of tipped work performed by each category of tipped employee, in violation of 12 N.Y.C.R.R. § 146-2.16.

33. At all relevant times, Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from Plaintiff's, FLSA Collective Plaintiffs', and Class Members' wages, in violation of the FLSA and the NYLL.

**iii. Plaintiff's Invalid Tip Credit Policy Claim – Failure to Provide Tip Credit Notice**

34. Independently and as an additional basis for invalidating Defendants' tip credit, Defendants failed to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with the written notice required as a strict precondition to taking any tip credit under the FLSA and the NYLL. Under 12 N.Y.C.R.R. § 146-2.2, an employer may not take a tip credit unless it provides each tipped employee with a written notice that states, among other things: (i) the amount of tip credit to be taken from the basic minimum hourly rate; and (ii) that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate. The notice must be provided in English and any other language spoken by the employee as a primary language, and must be acknowledged by the employee in writing.

35. Throughout Plaintiff's employment, Defendants never provided Plaintiff, FLSA Collective Plaintiffs, or Class Members with a compliant tip credit notice satisfying the requirements of 12 N.Y.C.R.R. § 146-2.2 or 29 U.S.C. § 203(m)(2)(A). Plaintiff is a primary Spanish speaker and was never provided with a tip credit notice in Spanish.

36. Defendants' failure to provide a compliant tip credit notice independently invalidates Defendants' tip credit for the entirety of the relevant period and entitles Plaintiff, FLSA Collective

Plaintiffs, and Class Members to recover the difference between the cash wages actually paid and the full applicable minimum wage for every hour worked.

**iv. Plaintiff's Time Shaving Claim**

37. At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

38. Defendants required Plaintiff, FLSA Collective Plaintiffs, and Class Members to clock in and out at the beginning and end of their shifts, and to clock out for thirty (30) minute meal breaks. However, Plaintiff and other tipped employees were routinely required to perform compensable work during those purported "off-the-clock" periods, including by performing non-tipped duties such as sweeping, cleaning, polishing silverware, polishing glass, participating in mandatory pre-shift team meetings, and engaging in other pre-shift side work. All tipped employees suffered similar harms.

39. Additionally, on occasions when Plaintiff was required to remain on the premises beyond his scheduled end time of midnight, Defendants did not pay Plaintiff for that additional time.

40. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly subjected to the same time shaving policies and required by Defendants to engage in unpaid labor on a daily basis without any compensation.

41. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for

all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

**v. Plaintiff's Uniform and Unlawful Deduction Claims**

42. Throughout Plaintiff's employment, Defendants required Plaintiff and other tipped employees to wear a uniform consisting of an all-black shirt, all-black pants, and all-black shoes. Plaintiff was required to purchase this uniform at his own expense, in an amount that exceeded the applicable hourly minimum wage in the workweek of purchase, in violation of NYLL § 193 and 12 N.Y.C.R.R. § 146-1.8.

43. Plaintiff was also required to launder and maintain his required uniform at his own expense. Defendants did not launder Plaintiff's uniform and did not pay Plaintiff a lawful uniform maintenance allowance at the rates required by 12 N.Y.C.R.R. § 146-1.7. To the extent any uniform-related allowance appears on Plaintiff's wage statements, the amount and labeling of any such allowance failed to comply with the strict statutory and regulatory requirements.

44. Defendants also made deductions from Plaintiff's wages, including deductions identified on Plaintiff's pay statements, that were not authorized by law or by an express written authorization signed by Plaintiff for the categories permitted under NYLL § 193(b). Such deductions are categorically prohibited.

45. FLSA Collective Plaintiffs and Class Members were similarly subjected to the same unlawful uniform and deduction practices.

**vi. Plaintiff's WTPA Violation Claims**

46. At all relevant times, Plaintiff and Class Members never received an accurate wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

47. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL—Defendants knowingly and willfully operated their business with a policy of not providing accurate wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants and annually thereafter.

48. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. Id. The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. Id.
>
> *Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21–22 (S.D.N.Y. March 20, 2020).

49. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants'

ability to further delay providing proper compensation to low-wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

50. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

51. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by the NYLL.

52. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $133,086 as reflected on his final year paystub and W-2").

53. The effect of reporting reduced wages on an employee's W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997))); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'" (quoting 42 U.S.C. § 413(a)(2)(A)(ii))).

54. "In the wake of the Supreme Court's decision in TransUnion, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

55. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

56. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in Calderon squarely addressed FICA standing. The plaintiffs in Calderon were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105–06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not . . . depend on whether the employer actually paid the taxes." Id. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under Lujan. Id. Whether the employer in Calderon made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. Id. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." Id.
>
> *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3–4.

57. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

58. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

59. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make—they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits. All of this means that the plaintiffs' real interest lies in ensuring that the [employers] make the proper reports of their income. Id.

60. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants did report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

61. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with proper wage notices and accurate wage statements, in violation of the NYLL.

***vii. Defendants' Knowing and Willful Disregard of Wage and Hour Obligations***

62. On numerous occasions throughout his employment, Plaintiff complained to human resources personnel and management—including, on information and belief, the General Manager,

Assistant General Manager, and Director of Food and Beverage—about the excessive non-tipped side work he was required to perform and the operation of the tip pool. Plaintiff's complaints fell on deaf ears, and Defendants made no changes in response.

63. Defendants' disregard of Plaintiff's repeated complaints, in conjunction with Defendants' longstanding and systemic adoption of the policies challenged herein, demonstrates that Defendants' violations of the FLSA and the NYLL were knowing and willful.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
**(On Behalf of Plaintiff and FLSA Collective Plaintiffs)**

64. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

65. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

66. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

67. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

68. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to time shaving.

69. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper minimum wages and overtime, due to an invalid tip credit policy, including by failing to provide the tip credit notice required as a precondition to taking the credit and by causing Plaintiff and FLSA Collective Plaintiffs to perform non-tipped duties for continuous periods exceeding thirty (30) minutes and for more than twenty percent (20%) of their workweeks.

70. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

71. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper minimum wages and overtime premiums, when Defendants knew or should have known such was due.

72. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

73. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

74. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages, and liquidated damages.

75. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
## (On Behalf of Plaintiff and Class Members)

76. Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

77. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

78. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of time shaving.

79. Defendants willfully violated Plaintiff's and Class Members' rights by failing to timely pay them their full weekly wages, as required by NYLL § 191(a)(1).

80. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay their full tipped wages, due to an invalid tip credit policy.

81. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

82. Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the lawful minimum wage for all hours worked. As factually described above, Defendants were not entitled to claim any tip credits from Plaintiff's and Class Members' wages under the NYLL because Defendants failed to provide the written tip credit notice required by 12 N.Y.C.R.R. § 146-2.2 and because Defendants caused Plaintiff and Class Members to perform substantial non-tipped duties.

83. Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to an improper policy and practice in which they were required to engage in non-tipped work for: (i) continuous periods of time exceeding thirty (30) minutes; and/or (ii) more than two (2) hours or twenty percent (20%) of each of their workdays.

84. Defendants willfully violated Plaintiff's and Class Members' rights by operating a mandatory tip pool that allocated tips without regard to the actual tipped work performed by each category of employee, in violation of 12 N.Y.C.R.R. § 146-2.16.

85. Defendants willfully violated Plaintiff's and Class Members' rights by requiring them to purchase and maintain required uniforms at their own expense without paying the uniform maintenance allowance required by 12 N.Y.C.R.R. §§ 146-1.7 and 146-1.8.

86. Defendants willfully violated Plaintiff's and Class Members' rights by making deductions from their wages that were not permitted by NYLL § 193 or any other provision of law, and that were not the subject of an express written authorization for any of the limited purposes permitted by NYLL § 193(b).

87. Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law § 195(1).

88. Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

89. Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime wages, unpaid spread-of-hours pay where applicable, unlawfully deducted wages, unreimbursed uniform expenses and uniform maintenance pay, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to the New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to time shaving, owed under the FLSA and the NYLL;

d. An award of unpaid wages, including overtime, due to an invalid tip credit policy, owed under the FLSA and the NYLL;

e. An award of unpaid wages on account of unlawful wage deductions, unreimbursed uniform purchase costs, and unpaid uniform maintenance pay, under the NYLL;

f. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i. An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

j. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as Representative of the Class; and

m. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable as of right by jury.

Dated: [DATE], 2026
New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*

*FLSA Collective Plaintiffs,*
*and the Class*

By: /s/ *C.K. Lee*
C.K. Lee, Esq.